740 A.2d 46

Dexter **STANCIL**

v.

**ERIE INSURANCE COMPANY, et al.**

No. 1259, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Nov. 1, 1999.

Catherine Collins (Jeffrey L. Harding and Sasscer, Clagett & Bucher, on the brief), Upper Marlboro, for appellant.

Amy Leete Leone (Thomas P. Ryan and McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before MOYLAN, JOHN J. BISHOP, Jr. (Retired, specially assigned), and DIANE O. LEASURE (specially assigned), JJ.

JOHN J. BISHOP, Jr., Judge (Retired, specially assigned).

Dexter Stancil appeals the judgment of the Circuit Court for Prince George's County, by which Appellant's request for summary judgment in his Declaratory Judgment action was denied in favor of Erie Insurance Company, et al., Appellees.

Appellant presents the following issue:

Stancil suffered a $275,000.00 fire loss as a result of a motor vehicle accident. He was paid $195,000.00 by his homeowner's insurance carrier, Erie. Can Erie assert a claim of subrogation against the at-fault driver before Stancil has fully recovered his damages?

The parties have agreed to the following facts, which we have edited:

On December 15, 1994, Sylvia Tayag ran a stop sign, and her vehicle collided with Gloria Janey's vehicle. Janey lost control of her car, which collided with Stancil's house and burst into flames. Stancil's house and its contents were destroyed. Stancil sustained damages of $275,000.00. Erie, Stancil's homeowner's insurance carrier, paid its policy limits of $194,345.79—$80,00.00 less than Stancil's loss.

Government Employees Insurance Company (GEICO) insured both drivers. It tendered Tayag's policy limits ($50,-000.00) to Stancil. Erie expressed its intention to claim, under its subrogation rights, any sums received by Stancil from GEICO. Stancil filed an action against Tayag and Janey, and then filed a Bill for Declaratory Relief against Erie to resolve the subrogation priority issue. Tayag and Janey were named as Interested Persons. Summary judgment was granted in favor of Erie.

We must determine whether the trial judge was legally correct. *Lynx, Inc. v. Ordnance Products, Inc.,* 273 Md. 1, 7, 327 A.2d 502 (1974); *Wills v. Baltimore County,* 120 Md.App. 281, 288, 707 A.2d 108 (1998), *rev'd on other grounds,* 352 Md. 620, 724 A.2d 22 (1999). Md. Rule 2–501(e) provides, *inter alia:*

(e) *Entry of judgment.* The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Appellant does not dispute the issue of whether the policy gives Erie the right to subrogation. Rather, he asks what is the priority of that right against a third party tortfeasor when the insured has not recovered the full amount of his loss. He cites *Bachmann v. Glazer & Glazer, Inc.,* 316 Md. 405, 559 A.2d 365 (1989) and quotes the following from page 416, 559 A.2d 365:

> Recovery on a theory of conventional subrogation is based on contract but it is nevertheless subject to principles of equity. A conventional subrogee is not necessarily entitled to subrogation as a matter of legal right; the relative equities of the parties are still to be balanced.

In *Roberts v. Total Health Care, Inc.,* 109 Md.App. 635, 648, 675 A.2d 995 (1996), *aff'd,* 349 Md. 499, 709 A.2d 142 (1998) (citations and footnotes omitted), we said:

> Maryland courts recognize three types of subrogation claims: (1) legal subrogation; (2) conventional subrogation; and (3) statutory subrogation. These three categories exist independently of each other. The nonexistence of one does not *per se* exclude a finding of the other.

*Roberts* teaches that "conventional subrogation," the type that is before us, requires proof (1) that Stancil assigned the right of subrogation to Erie, and (2) that Erie paid the amount it was obligated to pay for the benefit of Stancil. 109 Md.App. at 650, 675 A.2d 995. Erie is entitled to subrogate its claim unless it would be inequitable to do so. Stancil assigned the right of subrogation to Erie, and Erie paid the amount it was obligated to pay under the policy. The only disputed issue is whether, under the facts, it would be inequitable to permit Erie to exercise its subrogation rights under the policy.

Appellant argues that it would be inequitable to do so until he is made whole. He cites *Esparza v. Scott and White*

*Health Plan,* 909 S.W.2d 548 (Tex.App.1995) and quotes the following from page 551 (emphasis in original):

While an insurance contract providing expressly for subrogation may remove from the realm of equity the question of *whether* the insurer has a right to subrogation, it cannot answer the question of *when* the insurer is actually entitled to subrogation or *how much* it should receive.

In *Esparza,* a health insurance case, the appellate court observed that the Esparzas were not made whole by their settlement and they contended that this finding and the "made whole" doctrine precluded the subrogee from recovering. The Court went on to state:

Although it is entitled to great weight, this rule of equitable subrogation is not absolute, and must be considered within the factual context of the parties' dispute. Here, the Esparzas acted without regard for the subrogation rights of Scott & White by settling with Dr. Orrick for less than his insurance policy limits, releasing him from all claims, and nonsuiting their claim for past medical expenses. This Court will not condone a party's acting to wholly compromise the rights of a subrogee and then hiding disingenuously behind the "made whole" doctrine.

909 S.W.2d 548, 552

Appellant also cites *Powell v. Blue Cross and Blue Shield,* 581 So.2d 772 (Ala.1990), and quotes from page 777: "The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole." The *Powell* court had earlier quoted the following from *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis.2d 263, 271–72, 316 N.W.2d 348, 353 (1982):

[E]ven though an insured has recovered from a tortfeasor a sum more than sufficient to equal the subrogated amount claimed by the insurer, the insurer is not entitled to subrogation unless the insured has been made whole for his loss. The purpose of subrogation is to prevent a double recovery by the insured. Under circumstances where an insured has received full damages from the tort-feasor and

has also been paid for a portion of those damages by the insurer, he receives double payment—he has been made more than whole. Only under those circumstances is the insurer, under principles of equity, entitled to subrogation. Subrogation is to be allowed only when the insured is compensated in full by recovery from the tort-feasor.

581 So.2d at 776–77.

Both of these cases involved health care insurers who were, by their contracts, given the right of subrogation for recovery of the amounts of their payments for medical expenses on behalf of their insureds. Health insurance policies differ from the policy involved *sub judice* which has a precise policy limit, a maximum amount that the insurer is required to pay. Health insurance policies do not require the insured to select a maximum overall limit. The limits are set by the company depending on the medical service provided. Here, Stancil decided on the limit and chose one that was less than the real value of his property.

Appellant suggests that Md.Code, Art. 27, § 807 provides support for his position. That statute provides, in pertinent part:

### § 807. Restitution for crimes.

(a) *Restitution upon conviction, acceptance of plea of nolo contendere, etc.; priority of payment; reasons for not ordering restitution.*

\* \* \*

(5) The court may order that restitution be made to:

\* \* \*

(iii) A third-party payor, including an insurer, which has made payment to the victim to compensate the victim for a property loss or pecuniary loss under this subsection.

(6) If the victim has been fully compensated for the victim's loss by a third-party payor, the court may issue a judgment of restitution directing the defendant or liable parent to pay restitution to the third-party payor. Otherwise, payment of

restitution to the victim has priority over payment of restitution to the third-party payor.

*Anne Arundel County v. Hartford Accident and Indemnity,* 329 Md. 677, 621 A.2d 427 (1993), held contrary to Appellant's argument. Also the language used by the Court in that case supports the trial court's disposition of this case. Judge Orth, for the Court, stated what should be the basis of our disposition of this case:

Over a century ago this Court said:

> [T]he right of parties to contract as they please is restricted only by a few well defined and well settled rules, and it must be a very plain case to justify a court in holding a contract to be against public policy.

*Estate of Woods, Weeks & Co.,* 52 Md. 520, 536 (1879). We emphasized:

> It must be a case in which the common sense of the entire community would so pronounce it.

*Id.* We find no departure from this view over the years.

> The Court noted that in *Casualty Insurance Company's Case,* [82 Md. 535, 34 A.2d 778 (1896)] it "quoted with approval this extract from *Richardson v. Mellish,* 2 Bing, 229, 130 Eng.Rep. 303:"
>
> "I, for one, protest, as my Lord has done, against arguing too strongly upon public policy; it is a very unruly horse and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail."
>
> [*Baltimore v. Md. Casualty Co.,*] 171 Md. [667,] at 673, 190 A. 250 [(1937)].

The Court continued and cited *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 386 A.2d 1216 (1978), to support the principle that the "stability of commercial and contractual relations" would be adversely affected if Maryland

courts had not "been hesitant to strike down voluntary bargains on public policy grounds, doing so only in those cases where the challenged agreement is patently offensive to the public good, that is, where 'the common sense of the entire community would ... pronounce it' invalid." *Id.* at 686–87, 621 A.2d 427 (citations omitted).

The function of the court is to perform a balancing of the public and private interests involved, and "enforcement will be denied only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh 'the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement' of the contested term." *Id.* at 687, 621 A.2d 427. Appellant's contention that the case *sub judice* "is identical to the restitution scenario" *supra,* and should be used by this Court for guidance is clearly wrong.

Finally, Appellant cites *Svea Assurance Co. v. Packham,* 92 Md. 464, 48 A. 359 (1901), which can best be summarized by a quotation from the case:

So, without in any way questioning the general principle of subrogation as announced in *Packham v. Insurance Co.,* and cases there cited, as well as many other similar authorities, we cannot apply it in a case such as this, where the insurer repudiated the right of the insured to represent it in the suit against the wrongdoer before judgment, and now (after the insured has in good faith made a settlement in accordance with the wishes and request of those who did cooperate with him) seeks to profit by its refusal to take part in that proceeding, on the theory that it was not a party to the settlement, and hence is not bound by it.

92 Md. at 481–82, 48 A. 359.

There is no dispute about the validity of the subrogation clause in the insurance policy. Section III, 6) OUR RIGHT TO RECOVER PAYMENT provides:

After making payment under this policy, we will have the right to recover from anyone else held responsible. This

right will not apply under *Section I* if you have waived it in writing prior to loss.

Anyone we protect will sign papers and do whatever is required to transfer this right to us, and do nothing to harm this right.

Anyone receiving the benefit of a payment under this policy will hold in trust for us the proceeds of any recovery of damages from another, and reimburse us to the extent of our payment.

Appellee reminds us that in Maryland we do not construe an insurance policy against the insurer, but interpret it as we would any other contract. *Aragona v. St. Paul Fire & Marine Ins. Co.,* 281 Md. 371, 378 A.2d 1346 (1977). "[W]ords are accorded their ordinary and accepted meanings." *Collier v. MD–Individual Practice Ass'n.,* 327 Md. 1, 607 A.2d 537 (1992). Actually, there does not appear to be any dispute about the meaning of Section 6. Given its literal interpretation, Erie had a right to subrogation after it complied with the terms of the policy by paying Stancil's loss. It did comply and is therefore entitled to exercise its rights under that section. The only issue is whether it would be equitable to permit it to do so since the insured has not been made whole.

"[I]t is generally recognized that an insurer is subrogated to claims of its insured against others, whether *ex contractu* or *ex delicto,* once the insurer has indemnified the insured for his loss." *Travelers Indem. Co. v. Insurance Co. of N. Am.,* 69 Md.App. 664, 680, 519 A.2d 760 (1987) (citations omitted). The rights to which the insurer is subrogated have been broadly described as, "all the rights of recovery of the insured of every nature, whatsoever." *Id.*

It is difficult for us to see the applicability of "principles of equity" to the issue in the case *sub judice,* unless we were to hold that the Appellant's failure to insure his property adequately somehow creates a responsibility on the insurer.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**