45 A.3d 916

**Dakota D. McDANIEL**

v.

**STATE of Maryland.**

**No. 258, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

June 7, 2012.

552

Celia Anderson Davis (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Diane E. Keller (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: DEBORAH S. EYLER, KEHOE, IRMA S. RAKER (Retired, specially assigned), JJ.

RAKER, J.

Dakota D. McDaniel, appellant, was convicted in the Circuit Court for Washington County of assault in the second degree. He presents the following question on appeal: Whether the circuit court erred in ordering him to pay restitution to the victim. We shall hold that the court did not err in ordering payment of restitution and, accordingly, shall affirm.

I.

Appellant was charged by criminal information in the Circuit Court for Washington County with first-degree assault, second-degree assault, reckless endangerment, wearing, carrying, and transporting a handgun, and using a handgun in the commission of a crime of violence. His case was tried to a jury, which found him guilty of second-degree assault and not guilty on the remaining charges. The court sentenced appellant to a term of incarceration of seven years, but credited appellant for 111 days already served and suspended the balance of the term. The court further sentenced appellant to five years of supervised probation and, as a condition of that probation, ordered him to pay $4,000 in restitution to the assault victim and $297 to the Criminal Injuries Compensation Board ("the Board").

The events leading to appellant's conviction occurred on the evening of July 14, 2010, within the Halfway Manor Apartments in Hagerstown, Maryland. The victim, Andrew Robinson, testified that he and some friends were standing outside the apartment of another friend when appellant approached him. The two, who had met once or twice before, exchanged a

few words, whereupon appellant took a small handgun from his pocket and struck Robinson in the face with it. The blow knocked out one of Robinson's front teeth. Robinson stated that he attempted to leave, but appellant and another individual continued the attack. Robinson's friends came to his aid, and the fight broke up when police arrived. The State presented testimony from two of Robinson's friends, who confirmed his account and added that appellant had dropped the handgun, and that it was picked up by his girlfriend. Appellant and two witnesses testified on his behalf. Appellant denied that he used or even owned a handgun and claimed that Robinson and his friends were the aggressors; appellant threw only one punch in self-defense. The defense witnesses corroborated this version of events.

Robinson testified that following the assault, he visited a dentist "to see what it would cost to get a new tooth put in," and a medical doctor for treatment of an infection in his mouth. The latter prescribed painkillers and an antibiotic. At the close of its case, the State offered into evidence medical and dental records supporting Robinson's testimony. The jury found appellant guilty of second-degree assault only, and the court proceeded immediately to sentencing.

The State advised the circuit court that Robinson had submitted a claim of $297.49 to the Board, which the Board had paid to the Diagnostic Imaging Services and Medical Practice of Antietam. "But the other expenses," the State continued, "unfortunately are part of the dental work which are going to take, are started and are going to take another year to complete." The estimate statements for replacing Robinson's missing tooth, which both the State and the defense possessed, ranged "between four and five thousand dollars." Given that the cost of reparative treatment was only an estimate, the State expressed uncertainty as to the amount of restitution to request. In response, the circuit court said that it was "inclined to set the restitution at four thousand dollars subject to you being able to . . . come in and contest that figure."

With respect to possible incarceration, the State deferred to the court, but conveyed that "the victim's primary concern has always been restitution." Defense counsel requested a suspended sentence and said that appellant "has to realize if he doesn't make payments on restitution he could go to the Division of Corrections." Appellant advised the court that although he was not employed currently and had a few, unrelated criminal matters pending, he was looking for work and did not have any physical disabilities preventing him from obtaining employment. During the sentencing proceeding, the circuit court told appellant that it agreed with the State that the victim's main concern was restitution, "and that isn't going to happen if you are locked up." In addition to the suspended sentence, the court ordered probation, conditioned upon appellant's payment of $297 to the Board[1] and $4,000 to Robinson, "at the rate of no less than one thousand dollars per year and further pursuant to a schedule to be adopted between [appellant] and [his] probation agent." Appellant made no objection to the restitution or the sentence. This timely appeal followed.

## II.

Before this Court, appellant argues that the circuit court's order of restitution to Robinson exceeded the court's authority and is an illegal sentence.[2] Specifically, appellant contends that the statute governing restitution payments covers, *inter alia*, only actual dental expenses or losses, but at the time of sentencing no dental work had been done and, thus, there was no "actual loss to the victim." Estimates of treatment "not yet certain to occur in the future," appellant maintains, are not permitted under the law. Appellant further

---

1. Appellant does not challenge the order to reimburse the Board.

2. An order to pay restitution as a probation condition is part of a criminal sentence. If such a condition exceeds the authority of the court, it is an illegal sentence, and a challenge to it can be raised initially at any time, including on appeal. *See Carter v. State,* 193 Md.App. 193, 209, 996 A.2d 948 (2010).

contends that the record from the sentencing proceeding "suggests" that he does not have the ability to pay the ordered restitution.

The State argues that the plain language of the restitution statute authorized the circuit court to order restitution for dental work that had not yet been done and was based upon estimates for future dental treatment. With respect to an inability to pay the amount of restitution, the State contends that appellant affirmatively waived such an argument by assuring the court that he could work and by not raising lack of ability to pay at the sentencing and restitution hearing. On the merits, the State maintains that nothing in the record supports appellant's contention that he is unable to pay restitution.

### III.

In *Downes v. Downes*, 388 Md. 561, 571, 880 A.2d 343 (2005), Judge Wilner, writing for the Court of Appeals, expressed concisely an appellate court's task when interpreting a statute:

> "We have stated the controlling principles of statutory construction so often that only the briefest exposition is necessary. Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created."

Maryland Code (2001, 2008 Repl.Vol.), §§ 11–601 through 11–619 of the Criminal Procedure Article[3] govern the award

---

**3.** All subsequent statutory citations are to the Criminal Procedure Article of the Maryland Code.

and payment of restitution by a criminal defendant. In particular, § 11–603 provides as follows:

"(a) Conditions for judgment of restitution.—A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:

(1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased;

(2) as a direct result of the crime or delinquent act, the victim suffered:

(i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses;

(ii) direct out-of-pocket loss;

(iii) loss of earnings; or

(iv) expenses incurred with rehabilitation;

\*      \*      \*

(5) the Criminal Injuries Compensation Board paid benefits to a victim."

§ 11–603(a). Restitution under this section "is a *criminal sanction,* not a civil remedy." *Grey v. Allstate Ins. Co.,* 363 Md. 445, 451, 769 A.2d 891 (2001) (emphasis in original). It serves the familiar penological goals of retribution and deterrence, and especially rehabilitation. *See Anne Arundel County v. Hartford Accident & Indem. Co.,* 329 Md. 677, 685, 621 A.2d 427 (1993); *see also Grey,* 363 Md. at 450–61, 769 A.2d 891 (discussing the purposes of restitution). Predominantly and traditionally, however, the point of the restitution statute is to compensate the victim for the expenses and losses caused directly by the defendant. *See Chaney v. State,* 397 Md. 460, 470, 918 A.2d 506 (2007). "The objectives of restitution do not include that the victim must be made whole by the full reimbursement of the victim's loss, but they do not preclude that possibility if the defendant has the ability to pay." *Hartford Accident & Indem. Co.,* 329 Md. at 685–86, 621 A.2d 427.

■ To that end, "[a] victim is presumed to have a right to restitution under subsection (a) of" § 11–603 when "the court is presented with competent evidence of any item listed in subsection (a) of this section." § 11–603(b)(2). Competent evidence of entitlement to, and the amount of, restitution need only be reliable, admissible, and established by a preponderance of the evidence. *See Juliano v. State*, 166 Md.App. 531, 540, 890 A.2d 847 (2006). Moreover, "a written statement or bill for medical, dental, hospital, counseling, funeral, or burial expenses is legally sufficient evidence of the amount, fairness, and reasonableness of the charges and the necessity of the services or materials provided"; a defendant challenging the charges bears the burden of proving they are not fair or reasonable. § 11–615(a)–(b).

## A.

■ We first address whether the criminal restitution statute permitted the circuit court to order restitution on the facts of this case. Appellant contends that awarding restitution was error because, at the time of sentencing, the victim "had not incurred any monetary loss," or any "actual loss." Section 11–603(a)(2)(i) does not specify when "actual ... dental ... expenses or losses" are incurred.

The General Assembly did not define "expense" or "loss," and, therefore, we read the words in accord with their ordinary, popular meaning. *See, e.g., Williams v. State*, 200 Md.App. 73, 110–11, 24 A.3d 210 (2011).[4] "Expense" is defined in *Webster's New International Dictionary* 896 (2d ed.1950) as "that which is expended, laid out, or consumed; outlay; hence, the burden of expenditure"; in an economic

---

4. Many people use the terms "expenses" and "losses" interchangeably. But in several fields, such as business, accounting, taxation, and insurance, the words are used to denote distinct concepts. *Compare Black's Law Dictionary* 598–99 (7th ed.1999) (defining "expense" as "[a]n expenditure of money, time, labor, or resources to accomplish a result" and listing twenty-one specific kinds of expense), *with id.* at 956 (defining "loss" as, *inter alia*, "a decrease in value" and listing twenty-seven varieties).

sense it means an "outlay; cost or money paid out." "Loss," on the other hand, is defined as the "[a]ct or fact of losing (in various senses) or suffering deprivation"; "unintentional parting with something of value; as, ... *loss* of health or reputation"; "[t]hat which is lost; that of which anything is deprived or from which something is separated, usually unintentionally and to disadvantage." *Id.* at 1460. Thus, unlike "expense," the word "loss" does not imply necessarily an action on the part of the one who incurs it: a victim my suffer a "loss"—a harm or deprivation—through the actions of a criminal defendant; the victim will incur an "expense" when he seeks to remedy or ameliorate that loss. For example, one who suffers a laceration from an assault has a medical loss; when one incurs a debt or pays money to a physician to treat that loss, one has a medical expense.

Although we think this is the most logical interpretation of the meanings of "expenses or losses" as used in the statute, we acknowledge that the term "losses" in § 11–603(a)(2)(i) is not without ambiguity; people do not speak ordinarily of "medical losses" or "funeral losses." As such, we look to the available legislative history to help clarify the words of the statute. *See Downes,* 388 Md. at 571, 880 A.2d 343.

Prior to 2005, § 11–603(a)(2)(i) permitted restitution only for "actual medical, dental, hospital, counseling, funeral, or burial expenses." In that year, the General Assembly amended the section, *inter alia,* "for the purpose of expanding the circumstances under which a judge may order a defendant or child respondent to make restitution to include situations in which the victim suffered certain losses or suffered expenses incurred rehabilitation." 2005 Maryland Laws ch. 512, at 3017. Attempts to amend § 11–603(a)(2)(i), however, began earlier than 2005. In February 2004, House Bill 786 was introduced. As then drafted, the bill proposed deleting the word "actual" from the section. *See* H.B. 786, 2004 Session, First Reading, Feb. 6, 2004. The adjective "actual" describes something "[e]xisting in act or reality; really acted or acting or being; in fact; real;—opposed to *potential* "; "[i]n action or existence at the time being; present." *Webster's New Inter-*

*national Dictionary* at 27. After review and amendment by the House Judiciary Committee, the deletion of the word "actual" was stricken and the words "or losses" were added after "expenses." *See* H.B. 786, 2004 Session, Second Reading, Mar. 23, 2004. Although the bill passed the House, it died in the Senate.

In 2005, House Bill 1010 was introduced. This bill included the addition of "or losses" when it was introduced on February 11, and that language remained unchanged throughout the House's consideration and adoption of the bill. Senate Bill 873, identical to House Bill 1010, was introduced a few days later and was adopted by the General Assembly. Section 11–603(a)(2)(i) now permits restitution for "actual medical, dental, hospital, counseling, funeral, or burial expenses *or losses.*" 2005 Maryland Laws ch. 512, § 1, at 3019 (emphasis added).

Many of the statute's larger changes—such as the inclusion for the first time of restitution for rehabilitation costs and the increase of the liability cap for juvenile respondents to $10,-000—received specific comment from supporters of the bills and inquiry from legislators. We have uncovered no discussion in the legislative history which sheds any light upon the meaning of "or losses" in § 11–603(a)(2)(i). Nevertheless, the general purpose of the various bills introduced in 2004 and 2005, the evolution of § 11–603(a)(2)(i)'s proposed language during consideration of House Bill 786 in 2004, and the canons of construction persuade us that our interpretation of "or losses" in the statute is correct.

First, we note that the overall goal of the various amendments to the restitution statutes was to facilitate restitution and to expand the circumstances in which it could be obtained, including increasing the amount that could be sought and broadening the category of persons who could claim it. *See* 2005 Maryland Laws ch. 512, at 3017; Dep't of Legislative Servs., Md. Gen. Assembly, Fiscal & Policy Note for S.B. 873, 420th Sess. (2005). For instance, noting that third parties (other than governmental units or insurers) who paid expenses on behalf of financially-strapped victims were not entitled to

restitution under the law at the time, supporters of the statutory amendments urged the General Assembly successfully to adopt provisions that would permit restitution to third-party payors. *See* 2005 Maryland Laws ch. 512, § 1, at 3019–20 (codified at § 11–606(a)); *Hearing on S.B. 873 Before S. Comm. on Judicial Proceedings*, 2005 Leg., 420th Sess. (Md. Mar. 23, 2005) (testimony of Roberta Roper, Chair, Md. Crime Victims' Resource Center, Inc.). Therefore, we interpret the phrase "or losses" with an eye to its expansive purpose.

Second, we note that the adjective "actual" in § 11–603(a)(2)(i) serves to limit restitution for the items in that provision to those existing at the time restitution is sought. *See Webster's New International Dictionary* at 27. A victim or victim's representative who has not yet paid, for example, a doctor or dentist or funeral director, could not be said to have an "actual" expense. Removing the word "actual" seemed aimed at extending the opportunity for restitution to those situations. We do not know why "actual" was retained, but the addition of "of losses" to the list of items for which restitution could be sought, instead of simply deleting "actual," suggests strongly that the General Assembly intended to permit restitution in situations where victims had experienced a detriment or harm, at that time, due to the actions of the criminal defendant. That is, where the victims had "losses."

Finally, we agree with the State that appellant's argument would render "losses" in § 11–603(a)(2)(i) superfluous by making its meaning coextensive with "expenses." When interpreting a statute, we presume that the legislature intended every word and phrase to have meaning. *See, e.g., State v. Sullivan*, 407 Md. 493, 502, 966 A.2d 919 (2009) ("[W]e strive not to construe statutes so as to render any word, clause, sentence or phrase as surplusage, superfluous, meaningless or nugatory." (internal quotation marks omitted)). This is especially so when the relevant phrase was subsequently and specifically added to a statute through amendment.

Admittedly, one does not speak usually of "medical losses" or "dental losses." Rather, it is customary to speak of "ex-

penses." But actual expenses—where a victim suffers a harm
from a defendant and expends money to treat or cure that
harm—were covered by the statute prior to 2005. What
appears not to have been covered was the situation in which a
victim sustained a harm from a defendant but had not yet
incurred an expense to correct it. We conclude that the goal
of the General Assembly in adding "or losses" was to expand
the circumstances in which a victim could claim restitution
from a defendant. We think "dental losses," however impre-
cise a phrase, was meant to cover a situation in which an
individual has suffered a harm—a dental injury—and has not
yet expended money to correct it. Our interpretation does not
mean that mere speculative claims will satisfy the statutory
requirements for recovery. A victim must still present com-
petent evidence that the expenses are reasonably certain to be
incurred. *See* §§ 11–603(b), 11–615.

*In re John M.,* 129 Md.App. 165, 741 A.2d 503 (1999), cited
by appellant, is not to the contrary. In that case, the juvenile
John M. had been found involved with sexually abusing two
female cousins he had been babysitting. *Id.* at 170, 741 A.2d
503. The juvenile court had ordered him and his mother to
pay $38,000 for the girls' future counseling expenses. *See id.*
at 171, 741 A.2d 503. The pertinent statute at the time,
however, permitted only restitution of "the lesser of the actual
medical, dental, hospital, funeral, and burial *expenses incurred*
by the injured person as a result of the injury or $ 10,000."
*Id.* at 177, 741 A.2d 503 (emphasis added). Among the
numerous challenges to this order, John M.'s appeal called
upon this Court to address in juvenile cases "the problem
created by restitution requests for undetermined and not yet
incurred expenses." *Id.* at 183, 741 A.2d 503. Ultimately, we
held that "statutory limitations and due process considerations
do not permit an order of restitution for counseling expenses
that are not yet certain to occur." *Id.* at 185, 741 A.2d 503.
"Thus," we said, "an award for counseling expenses already
incurred was appropriate, but not the award for the then
future counseling expenses." *Id.*

The obvious distinction between *John M.* and the case *sub judice* is that the statute here permits restitution based upon "expenses or losses," whereas the statute in *John M.* permitted a victim to recoup only "expenses." Moreover, there was concern in *John M.* that the future counseling could not be directly traced to the juvenile's wrongful conduct. *See id.* at 182, 741 A.2d 503 ("[T]here is an issue created regarding the causal effect of John M.'s acts and future expenditures."). There is no similar causation question here, nor is there the same worry that the individual making restitution is being asked to sign a blank check. Here, Robinson presented a statement of $4,000 to $5,000 for the estimated cost of dental work, and the court ordered payment in the low end of that range, reminding the victim that he had a civil remedy if the restitution order was insufficient.

Indeed, case law interpreting another provision of the same section of the restitution statute that we consider in the present case supports our interpretation. In *Goff v. State*, 387 Md. 327, 331–32, 875 A.2d 132 (2005), the Court of Appeals addressed whether a restitution order to pay an assault victim the cost to replace a shower head damaged during the assault was proper, *i.e.*, whether the property damage was a "direct result" of the assault, as required by the statute.[5] Before the circuit court, written estimates and testimony placed the cost of repairs at $2,156, and the court ordered restitution in that amount, even though the victim had not yet expended any money. *See id.* at 335–36, 875 A.2d 132.

Goff did not argue explicitly that the restitution order was illegal because the assault victim had not yet incurred the expense of fixing the damaged shower, but the issue came up at oral argument. Judge Greene, writing on behalf of a unanimous Court, disposed of this concern briefly:

---

5. As noted above, § 11–603(a)(1) permits restitution where "as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased."

"Concluding our discussion of this issue, we note that during oral argument, counsel for Mr. Goff raised a number of concerns about what might happen civilly if [the victim] takes the restitution money and fails to repair the shower. We decline to respond to those questions because an answer is not necessary for us to decide the present case. We re-emphasize, however, that restitution is a criminal sanction, not a civil remedy."

*Id.* at 348, 875 A.2d 132.

■ As did the Court of Appeals, we think the question in this case of what would happen if the victim takes the $4,000 in restitution and does *not* use it to treat his dental losses is beyond our purview. A claim for restitution must be reasonable and supported by competent evidence. *See Juliano,* 166 Md.App. at 540, 890 A.2d 847. Moreover, the presumption of reasonableness afforded to "a written statement or bill," § 11–615(a)–(b), for something like dental treatment, will encourage victims to seek, initiate, and eventually pay for the treatment from or the services of a professional.[6]

■ In any event, that concern is not present here. The unchallenged record reflects that appellant caused $4,000 to $5,000 of damage to the victim's teeth, and that the victim had begun treatment. The statement of the cost of repairing the dental damage and of replacing Robinson's missing tooth was specific enough; it was of a definite amount that did not encompass speculative future work. *Cf. Chaney,* 397 Md. at 473, 918 A.2d 506 ("It thus seems apparent, at least from the record, that the order that appellant pay $ 5,000 in restitution as a condition of his probation was pulled entirely out of thin air. . . . It is for that reason that the order was entered erroneously and must be vacated."). There is no question that the loss was a direct result of appellant's criminal conduct.

---

**6.** Although § 11–615 mentions only "a written statement or bill for medical, dental, hospital, counseling, funeral, or burial *expenses,*" it refers specifically to § 11–603, and we presume that a statement or bill can cover losses as well as expenses.

From the foregoing discussion, it is clear to us that the General Assembly, in adding the words "or losses," intended to broaden restitution awards to victims as a direct result of crime. We hold that the statute authorized the circuit court to order appellant to pay $4,000 in restitution to the victim for the dental losses resulting from appellant's assault.

### B.

As for appellant's second argument—that the record indicates he is unable to pay the restitution ordered here—we agree with the State and hold that appellant has waived this issue. "If there is an opportunity to object to a ruling or order when it is made, the failure to do so (and to inform the court of the relief requested) may constitute waiver." *Reiger v. State*, 170 Md.App. 693, 698, 908 A.2d 124 (2006) (quotation marks omitted). When a court orders a defendant to make restitution to a crime victim, and the defendant believes that the court either fails to inquire into his ability to pay or errs in determining his ability to pay, the defendant must make a timely objection to the order, else the issue is waived. *See id.* at 699–701, 908 A.2d 124; *see also Brecker v. State*, 304 Md. 36, 41–42, 497 A.2d 479 (1985) (holding that a defendant's failure to object to trial court's failure to inquire into defendant's ability to pay "constitutes a waiver of that particular issue"). Thus, unlike a contention that a court's restitution order is illegal, an argument that an order is simply incorrect cannot be made in the first instance on appeal.

In the present case, appellant informed the circuit court that he was looking for employment and did have not any disabilities that would prevent him from working. Defense counsel urged a suspended sentence to enable appellant to make restitution payments, and advised appellant that failure to pay would violate his probation. Finally, the court made plain that it decided to suspend incarceration in large part because incarcerating appellant would frustrate appellant's ability to compensate the victim. Appellant raised not the slightest objection to the restitution order's amount or to the

understanding that he could afford to pay it. Under these circumstances, we hold that the argument is waived.

*JUDGMENT OF CONVICTION OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*