*In re Cody H.*, No. 27, September Term, 2016.  Opinion by Greene, J.

**JUVENILE JUSTICE—RESTITUTION**

Under § 11-603(a)(2)(iii) of the Criminal Procedure Article, a court may order restitution in a criminal or juvenile case if, "as a result of the crime or delinquent act, the victim suffered . . . loss of earnings."  A victim is *presumed* to have a right to restitution under § 11-603(a) if the victim or the State requests restitution and the court is presented with competent evidence of a loss of earnings.  *See* CRIM. PROC. § 11-603(b).  The juvenile court awarded restitution for loss of earnings for the period between September 2014, when the victim's injury occurred, and April 29, 2015 the date of the restitution hearing before the Magistrate.  The restitution ordered did not include any amount for the victim's future loss of earnings, i.e., the period after the date of the restitution hearing.  Notably, the General Assembly did not create an express limitation on restitution for future loss of earnings in § 11-603(a)(2)(iii), and an award for future loss of earnings could have been proper in this case as long as it was not speculative and did not cover losses not reasonably certain to occur.  We shall hold that the award of restitution in this case was within the confines of the restitution statute and affirm the judgment of the Court of Special Appeals.

Where a loss of earnings claim was proven by testimony, regarding the employment and the inability to work, and a letter from the employer regarding the duration and wage figures, there was competent evidence to support an order of restitution for loss of earnings.  Here, although the letter from the employer stated "approximate" hours and wages, the evidence was nonetheless sufficient to support a claim for loss of earnings.  The standard for restitution is not one of absolute certainty or precision.  Rather, there must be competent evidence showing entitlement to and the amount of lost earnings or expenses reasonably certain to be incurred by the victim as a direct result of the crime or delinquent act.  Further, such a claim must not be speculative.

Circuit Court for Baltimore County
Case No. J14-001852
Argued: November 4, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 27

September Term, 2016

_____

IN RE CODY H.

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: March 24, 2017

This case concerns a restitution award entered following a juvenile delinquency proceeding involving Petitioner, Cody H. ("Cody"). On February 19, 2015, a family magistrate of the Circuit Court for Baltimore County ("the magistrate") found that Cody had committed the delinquent act of assault by punching a sixteen year-old victim, Zachary F. ("Zachary"), in the face and breaking his jaw. At the disposition hearing held on April 29, 2015, the magistrate made a recommendation for a restitution award of $1,489.61 to the victim for medical expenses related to the assault. The magistrate did not award restitution for loss of earnings because the magistrate found that claim to be speculative. The State filed exceptions to the recommendation. An exceptions hearing was held before a juvenile court judge on June 15, 2015. The judge sustained the State's exception on the issue of restitution and imposed an additional restitution amount of $5,000 for Zachary's lost earnings.

Cody argues that the restitution statute, Md. Code (1974, 2008 Repl. Vol.), § 11-603 of the Criminal Procedure Article, does not permit the court to order restitution for lost wages to be earned in the future and that the Court of Special Appeals erred in holding that the restitution ordered in this case was supported by competent evidence. For the reasons that follow, we shall hold that the restitution award in this case was proper under § 11-603.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 31, 2014, a group of high school students, including Cody and Zachary, attended a party where alcohol was consumed. Zachary drank a large amount of alcohol and fell asleep in a chair at the party. Zachary later awoke to Cody spraying him with some sort of liquid from a bottle, which Zachary later testified he believed contained a cleaning

solution. Zachary and Cody engaged in an altercation when Zachary attempted to take the spray bottle away from Cody. During the altercation, Cody punched Zachary in the jaw. The day after the party, Zachary sought medical care for his jaw, which was fractured in two places. To treat the fractures, Zachary had a metal plate surgically implanted to allow his jaw to properly heal. Zachary's jaw was wired shut for five-to-six weeks and Zachary then underwent a second surgery to remove wires from his jaw. Zachary missed approximately three weeks of school at the beginning of the 2014 – 2015 school year due to his injury. Zachary and his mother reported the incident to the Baltimore County Police on October 7, 2014.

The Respondent, the State of Maryland ("the State") instituted juvenile delinquency proceedings against Cody. On behalf of Zachary, the State sought a restitution award of $1,492.61 for Zachary's medical expenses and $6,400.00 for Zachary's loss of earnings. At the adjudicatory hearing held on February 19, 2015, Cody admitted to punching Zachary but alleged provocation. The juvenile court found that Cody unlawfully assaulted Zachary.

A disposition and restitution hearing was held on April 29, 2015. At the disposition hearing, the magistrate presiding received testimony regarding Zachary's medical treatment and expenses and his lost earnings. Zachary testified that he was scheduled to work at Roseda Farm as part of a work-study program during the 2014 –2015 school year. The program was to begin on the first day of school and to continue for approximately forty weeks. Zachary would have earned $6,400 as part of this program. Zachary testified that he was not able to participate in the program because the vibrations from farm

2

machinery he would be required to operate would cause damage to his healing jaw. Zachary's father also testified as to the program in which Zachary would have participated.

At the restitution hearing, the State introduced a letter from the office manager at Roseda Farm, Marcia Bryant, in support of Zachary's claim for loss of earnings. The letter read as follows:

> To Whom this May Concern:
>
> Zachery [sic] [F.] was an employee of Roseda Farm starting in August 2014. Zachery was going to be on the work study program at Hereford High School and would have continue[d] working at Roseda Farm for the 2014/2015 school year. Zachery would have worked approximately 20 hours a week for approximately 40 weeks. Zachery would have made $6,400 if he would have continued at Roseda Farm.
>
> Sincerely,
>
> Marcia Bryant
>
> Office Manager

The magistrate recommended a restitution award of $1,489.61 for medical expenses and did not recommend any restitution for Zachary's lost earnings. Despite being persuaded that Zachary had planned to work at Roseda Farm, and noting that Zachary's testimony regarding the employment was alone sufficient to reach this conclusion, the magistrate declined to recommend a restitution award for loss of earnings. The magistrate found that the claim for $6,400 in lost earnings was speculative because nothing in the record established the duration Zachary would have otherwise continued to work at Roseda Farm or that Zachary was unable to find alternative employment. Further, the magistrate noted that the loss "certainly had not yet occurred."

The State filed exceptions to the magistrate's restitution order. An exceptions hearing took place on June 15, 2015 before a judge of the Circuit Court for Baltimore County, sitting as a juvenile court. The judge concluded that the State had established that Zachary was unable to participate in the work-study program due to injuries sustained in the assault by Cody. In response to Cody's argument that the loss of earnings was speculative, the judge commented that Zachary's claim was not any more speculative than any other lost wages claim, adding, "wouldn't that be the argument on any claim for lost wages, that the person could have been fired, they could have quit, they could have left for another employment?" In making his determination, the judge relied on Zachary's testimony as evidence of Zachary's inability to work, commenting: "You've got his testimony that the job required him to work, to operate machinery that the machinery involved vibrations and the vibrations from the machinery would adversely impact the healing of his jaw. That's, that was his testimony as to why he was unable to work."

The judge issued the following ruling:

I do think that the [magistrate] and find that the [magistrate] was clearly erroneous in finding that an Order of lost earnings in the case was speculative. The victim in the case had been employed by this employer at the rate of $8.00 an hour. That [the Roseda Farm letter] clearly demonstrates that the employer was offering continued employment to the victim, Zachary [F.], for the entire school year that he was enrolled at Hereford High, beginning in September, or they have August of 2014 for a period of forty weeks. There's nothing in the testimony in the transcript that as of the date of the hearing in front of Magistrate McAllister, which was April the 29th of 2015, that at any point in time he was able to go back to work. I'll reduce the claim based on the fact that at least through April the 29th he was unable to work, so I'm going to give him the four months of April, through April, from the beginning of September through the end of the year. So that's eight months times 4.3 weeks. I'm going to find that's thirty-two weeks, at minimum, at $8.00 an hour, times twenty hours a week, so I have $640 times

4

eight hours, $8.00 rather is his lost wage claim, which I total at being $5,120. I'll give the Defendant the further benefit and round the number down to $5,000 and enter an Order in the case. Restitution for lost wages against the Respondent and the parent in the amount of $5,000 and reduce that to an Order.

Thus, the juvenile court awarded restitution for loss of earnings for the 32-week period between Zachary's injury in September 2014 and the restitution hearing before the magistrate on April 29, 2015. The restitution award did not include any amount for Zachary's future loss of earnings, *i.e.*, the remaining eight-week period in the work study program which occurred after the restitution hearing.

Cody noted an appeal to the Court of Special Appeals, arguing that the juvenile court abused its discretion by ordering restitution in the amount of $5,000 for Zachary's loss of earnings because the magistrate erred by admitting the Roseda Farm letter and because Zachary's lost earnings were not a "direct result" of Cody's delinquent act. The Court of Special Appeals, in an unreported opinion, concluded that the information in the Roseda Farm letter was corroborated by the testimony of Zachary and of his father, which supported the reliability of the letter. The court thus held that the letter was sufficiently reliable to satisfy the relaxed evidentiary standard applicable to juvenile proceedings. The intermediate appellate court also found it significant that the magistrate expressed that the letter was irrelevant to his determination of the facts.[1] The Court of Special Appeals also held that the evidence adduced at trial constituted a competent basis for the court to reasonably conclude by a preponderance of the evidence that Zachary's loss of earnings

---

[1] The magistrate explained that he was persuaded of Zachary's planned participation in the work-study program by Zachary's testimony alone.

5

was a direct result of the delinquent act. The court noted the possibility that additional evidence could have been introduced at the hearing to provide additional support for the juvenile court's conclusion, but explained that it is not within the purview of the appellate courts to consider additional ways in which the State could have bolstered the restitution claim. Accordingly, the intermediate appellate court affirmed the juvenile court's order.

Cody petitioned this Court for review and we granted *certiorari* to answer the following questions:

1. Does Maryland's restitution statute allowing for recovery of lost earnings "as a direct result of the crime" permit the court to order restitution for lost earnings to be earned in the future and for lost earnings for a randomly selected period of time?

2. Did the Court of Special Appeals err in finding that competent evidence was introduced to support the claim for eight months of lost wages?

*In re Cody*, 448 Md. 724, 141 A.3d 135 (2016). For the reasons that follow, we shall affirm the judgment of the Court of Special Appeals and uphold the restitution award issued by the juvenile court.

## DISCUSSION
### Standard of Review

We ordinarily apply the abuse of discretion standard in reviewing a trial court's order of restitution. *Silver v. State*, 420 Md. 415, 427, 23 A.3d 867, 874 (2011). *See also Wiredu v. State*, 222 Md. App. 212, 228, 112 A.3d 1014, 1023 (2015) ("The decision to order restitution pursuant to [§11-603] and the amount lie within the trial court's sound discretion and we review the trial court's decision on the abuse of discretion standard."). However, because the first question presented by Cody involves statutory interpretation,

we review the first issue *de novo*.[2]  *Goff v. State*, 387 Md. 327, 337, 875 A.2d 132, 138 (2005) (explaining that questions of statutory interpretation are questions of law and are reviewed *de novo*).

## Legal Contentions

Cody contends that § 11-603 does not permit courts to order restitution for a future loss of earnings.  To support this contention, Cody argues that the operative verbs within the statutory scheme are written in the past tense and that this indicates that the General Assembly intended to authorize a restitution order for financial loss that has already been incurred.  Cody argues that compensation for the loss of future earnings is a civil remedy and involves complex calculations that are too difficult to assess in a proceeding ancillary to a criminal sentencing.  It is Cody's position that the judge abused his discretion in ordering the restitution because it was speculative and it was based upon an approximation of how many hours, and for what pay, Zachary might work.  Finally, Cody asserts that the evidence introduced to support the restitution claim was not competent evidence.  Cody claims that the record is devoid of any evidentiary basis for determining that Zachary's inability to earn money was connected to his injury sustained during the assault.

The position of the State is that the order of restitution for lost earnings was a proper exercise of the juvenile judge's discretion.  The State argues that even if the statute does

---

[2] The juvenile court had competent evidence before it of both past (from the injury to the hearing) and future (beyond the hearing) loss of earnings.  As discussed below, the court only awarded restitution for past loss of earnings, but we are called to interpret the statute and determine whether it encompasses restitution claims for future loss of earnings.

7

not allow for future lost wages, the outcome in this case is unaffected because the judge ordered restitution for lost wages during a time period that had already occurred. Further, the State contends that this Court need not, and should not, consider whether restitution for future earnings lost beyond the restitution hearing fall under the statute. The State urges, however, if we consider the issue, we should hold that the restitution statute covers future loss of earnings. The State also maintains that Cody's argument that the judge's calculation resulted in a speculative amount is without merit because competent evidence established the amount of weeks for which Zachary would work, the amount of hours per week, and the amount of compensation he would receive. The State adds that the judge reduced the amount of restitution for loss of earnings to reflect the time period which had expired at the time of the initial restitution hearing and further reduced the amount for Cody's benefit to account for the approximation. The State posits that Cody's attempt to "manufacture uncertainty" should fail because entitlement to "restitution should not be premised on the ability to identify an amount with microscopic precision." The State explains that there is a presumption that a victim is entitled to restitution where competent evidence is introduced and that Zachary's testimony that he was prevented from working in the program because of his injury was competent evidence to justify an order of restitution.

Amicus Curiae, Maryland Crime Victims' Resource Center, Inc., submitted a brief in this case contending that § 11-603 allows judgments of restitution for future loss of earnings. Amicus Curiae argues that the plain language of the statute does not limit restitution to past loss of earnings, and that our case law and the legislative history of the statute confirm that it permits restitution for a future loss of earnings.

8

**Restitution for Loss of Earnings**

"In Maryland, restitution may be ordered, with qualifications, as a direct sentence for a crime or delinquent act, in addition to any other penalty prescribed by the underlying sentencing or remedial statute." *Pete v. State*, 384 Md. 47, 55, 862 A.2d 419, 423 (2004). Under § 11-603(a)(2)(iii) of the Criminal Procedure Article, a Court may order restitution in a criminal or juvenile case if, "as a result of the crime or delinquent act, the victim suffered . . . loss of earnings." A victim is *presumed* to have a right to restitution under § 11-603(a) if the victim or the State requests restitution and the court is presented with competent evidence of a loss of earnings. *See* CRIM. PROC. § 11-603(b). *See also In re Tyrell A.*, 442 Md. 354, 364, 112 A.3d 468, 474 (2015) (explaining the statutory presumption of restitution). "Restitution under this section 'is a criminal sanction, not a civil remedy.' It serves the familiar penological goals of retribution and deterrence, and especially rehabilitation." *McDaniel v. State*, 205 Md. App. 551, 558, 45 A.3d 916, 920 (2012) (internal citations omitted). *See also State v. Stachowski,* 440 Md. 504, 512, 103 A.3d 618, 623 (2014). "It is long established that in Maryland, 'juvenile courts have broad discretion to order restitution, either against the juvenile himself, a parent, or both.'" *In re Earl F.*, 208 Md. App. 269, 276, 56 A.3d 553, 557 (2012) (quoting *In re Delric H.*, 150 Md. App. 234, 249, 819 A.2d 1117, 1126 (2003)).

> Restitution under [§ 11-603] serves several objectives, including: (1) rehabilitation of the defendant; (2) compensation of the victim; and (3) penalizing the transgressor. One purpose is to compensate victims who have been injured or who have suffered property loss as a result of the wrongful acts of a minor[.] Restitution can impress upon the [juvenile] the gravity of the harm he has inflicted upon another[,] and provide an opportunity for him

> to make amends. As such, compensation of the victim is an important factor to consider in the overall goal of rehabilitating the juvenile respondent.

*In re Delric H*., 150 Md. App. at 250–51, 819 A.2d at 1126–27 (internal citations omitted).

We first consider whether the restitution statute permitted the juvenile court to order restitution for loss of earnings on the facts of this case. We are thus required to interpret § 11-603 "to ascertain and implement the legislative intent, which is to be derived, if possible from the language of the statute . . . itself." *Downes v. Downes*, 388 Md. 561, 571, 880 A.2d 343, 349 (2005). The provision at issue allows a court to order restitution where "as a result of the crime or delinquent act, the victim suffered . . . loss of earnings." CRIM. PROC. § 11-603(a)(2)(iii). The General Assembly did not define the term "loss of earnings" in the restitution statute. Nor does an examination of the legislative history of § 11-603 reveal a definition for this term. Therefore, we read "the plain language of the statute and [the] ordinary, popular understanding of the English language dictates the interpretation of its terminology." *Bowen v. City of* Annapolis, 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. Dept. of Nat. Res.*, 385 Md. 563, 576–78, 870 A.2d 186, 193–94 (2005)). In determining the ordinary meaning of words, we have found it helpful to consult their dictionary definitions. *Bd. of Ed. of Prince George's Cnty. v. Marks-Sloan,* 428 Md. 1, 28, 50 A.3d 1137, 1153 (2012). *See also Ali v. CIT Tech. Fin. Servs., Inc.,* 416 Md. 249, 260–62, 6 A.3d 890, 896–98 (2010) ("When the Court can ascertain the Legislature's intent from the plain meaning of the verbiage, the Court need not delve deeper . . . . In seeking to apply the plain-meaning rule, it is proper to consult a dictionary or dictionaries for a term's ordinary and popular meaning.").

"Loss" is defined in *The Random House Dictionary of the English Language* 1137 (2d ed. 1987) as "detriment, disadvantage, or deprivation from failure to keep, have, or get[.]" "Earnings" is defined as "money earned; wage; profits." *The Randomhouse Dictionary of the English Language* 613 (2d ed. 1987). When interpreting legislative intent, "we apply the language [of the statute] as written and in a commonsense manner." *Downes*, 388 Md. at 571, 880 A.2d at 343. Here, Zachary had scheduled employment through which he would have been paid wages or "earnings." Zachary suffered a loss of earnings to the extent that his injuries deprived him of the opportunity to work and earn the wages, and to the extent that he failed to "get" the wages to which he was entitled. Therefore, under the plain language of § 11-603, Zachary suffered a "loss of earnings."

A basic principle of statutory construction is that we read a statute in a manner that neither broadens nor narrows the meaning of the plain language. *Condon v. State of Maryland-Univ. of Md.*, 332 Md. 481, 491, 632 A.2d 753, 758 (1993) ("[A] court may not add or delete words to make a statute reflect an intent not evidenced in that language[.]"). The plain language of the statute does not include a limitation on future loss of earnings, nor does it differentiate between past and future losses of earnings. If the General Assembly had intended to create such a limitation or distinction, it would have affirmatively done so. *See id.* Thus, we conclude that there is no express statutory limitation on restitution for future loss of earnings.

There are, however, express statutory requirements that the loss or expense must be a direct result of the crime or delinquent act and that the claim for restitution must be shown

11

by competent evidence.[3] CRIM. PROC. § 11-603. Moreover, our decisional law also places limitations on a judge's discretion to order restitution. In order for restitution to be proper, the claim for restitution cannot be speculative. *McDaniel*, 205 Md. App. at 563, 45 A.3d at 922 ("Our interpretation [that the term 'losses' covers expenses not yet incurred by the time of the hearing] does not mean that mere speculative claims will satisfy the statutory requirements for recovery."). Furthermore, the restitution cannot cover things that are not certain to occur in the future. *Id.* ("A victim must still present competent evidence that the expenses are *reasonably certain to be incurred*.") (emphasis added).

In order to confirm that we are correct in our conclusion that an exclusion on future damages is not one of the statutory or decisional law limitations on restitution, we examine briefly the legislative history of § 11-603 as well as our case law. *See Bourgeois v. Live Nation Entm't, Inc.*, 430 Md. 14, 27, 59 A.3d 509, 516 (2013) ("Legislative history may be considered in an effort both to confirm what appears to be a clear intent from the language itself and to discern legislative intent when that intent is not entirely clear from the statutory language."); *Ali,* 416 Md. at 261, 6 A.3d at 897 ("Notwithstanding the outcome of a plain-meaning analysis, however, [i]n the interest of completeness . . . we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account.") (quotation omitted).

---

[3] That the legislature included express limitations on restitution for loss of earnings but did not expressly create a limitation on loss of future earnings is evidence that the legislature intended for the statute to cover both past and future losses.

Prior to 1997, the predecessor to § 11-603, then codified as Article 27, § 807, did not mention juveniles. Md. Code Ann. (1957, 1997 Repl. Vol.) § 807 of Article 27. Rather, a separate statute addressed juvenile restitution, which up until 1996, was codified at § 808. At that time, there was no provision in § 808 (the juvenile restitution statute) regarding loss of income. *In re Zephrin D*., 69 Md. App. 755, 761, 519 A.2d 806 (1987), *superseded by statute as stated in In re Jason W.,* 94 Md. App. 731, 619 A.2d 163 (1993). However, in 1997, the General Assembly passed Senate Bill 173, which repealed § 808 and rewrote § 807 to apply to both criminal defendants *and* juveniles. Md. Laws 1997, Chs. 311 and 312, § 1. *See also In re John M*., 129 Md. App. 165, 173 n.2 , 741 A.2d 503, 507 n.2 (1999) ("Section 1, chs. 311 and 312, Acts 1997, effective October 1, 1997, repealed the former § 808 of Article 27 and rewrote Article 27, § 807. Substantive portions of the superseded § 808, including those at issue in this case, were included in the new § 807."). Senate Bill 173 was referred to as "The Victims' Rights Act of 1997." 1997 Md. Laws, Ch. 311, § 1, p. 2212. The General Assembly passed the Act "[for] the purpose of . . . expanding certain victims' rights laws to include juvenile proceedings[.]" *Id.* Thus, the purpose of the 1997 Act was to make victims' rights laws, including our restitution statute, more expansive. This is consistent with our conclusion that the legislature did not intend to create a limitation on restitution for loss of future earnings.

Moreover, a review of our case law confirms our conclusion. In *McDaniel*, the Court of Special Appeals focused on the addition of the words "or losses" to subsection (a)(2)(i) of § 11-603 and found that the term loss includes both past and future damages. Specifically, the court held that the restitution statute allowed for restitution for dental work

13

that the victim needed but had not yet been performed at the time of the restitution hearing.

205 Md. App. at 563, 45 A.3d at 922:

> [T]he goal of the General Assembly in adding [the words] "or losses" was to expand the circumstances in which a victim could claim restitution from a defendant. We think "dental losses," however imprecise a phrase, was meant to cover a situation in which an individual has suffered a harm—a dental injury—and has not yet expended money to correct it.

*Id.* In view of *McDaniel*, we see no reason why the legislature would have intended to allow for past *and* future damages by employing the word "losses" in subsection (a)(2)(i) but not by the word using "loss" in subsection (a)(2)(iii). Applying *McDaniel* in the context of a loss of earnings, we conclude that a victim is entitled to an award for loss of future earnings as long as the award meets both the statutory and decisional law limitations, *i.e.*, the claim is not speculative, the claim covers losses reasonably certain to occur, the loss was a direct result of the crime or delinquent act, and the claim is shown by competent evidence.[4]

Turning to the case at bar, we address Cody's argument that the restitution awarded in this case was improper. It is not clear why Cody considers this case to be one of "future earnings" because the loss of earnings restitution awarded in this case was for wages lost by Zachary as of the date of the restitution hearing. Cody cites cases outside-of-Maryland wherein restitution for lost earnings was ordered for "wages lost by the victim as of the

---

[4] We emphasize that an award of restitution for future loss of earnings is proper only to the extent that it meets these requirements. The restitution statute is not so broad as to encompass uncertain or speculative damages, or tort damages, such as restitution for pain and suffering. *See, e.g. State v. Addison*, 191 Md. App. 159, 990 A.2d 614 (2010) (noting that courts may award a victim lost wages "already accrued" or "reasonably anticipated").

date restitution was ordered and not for any future earnings." For example, Cody attempts to support his position by relying on the Washington state case of *State v. Lewis*, 791 P.2d 250 (Wash. 1990). In that case, the appellate court reversed an order of restitution for future lost wages of a deceased victim because the calculation of such wages would be speculative and because it concluded that the Washington legislature intended the statute to be read in the past tense, allowing restitution for losses that have already been incurred. *Lewis*, 791 P.2d at 253. That case is not at all factually similar to the case at bar. Here, Zachary had definite employment for a scheduled duration with an approximation of the wages he would earn and hours he would work. Moreover, Zachary had incurred the loss of these earnings at the time of the restitution hearing.

Perhaps illustrative of Cody's definition of future lost earnings is his reliance upon the definition used by the Colorado Court of Appeals in *People v. Bryant*, 122 P.3d 1026 (Colo. Ct. App. 2005):

> Although the phrase "lost wages" is not defined in the restitution statute, or anywhere else in the criminal code, the comparable phrase "loss of earnings" is generally defined in the civil context as earnings that were not received from the date of injury to the date damages for that injury are determined. In contrast, the phrase "loss of future earnings" is generally defined as earnings that, because of the opposing party's conduct, are not expected to be received from the date damages are determined forward.

*Bryant*, 122 P.3d at 1028 (emphasis added) (internal citations omitted). Assuming that the above definition of loss of future earnings is proper, the restitution ordered in this case does not fit within that definition. The restitution in the case at bar is not commensurate with the definition of "loss of *future* earnings." Here, the restitution was ordered for eight months from the date of injury for wages that Zachary did not earn accounting from the

15

date of his injury to the date of restitution hearing. No award was made for future earnings lost beyond the date of the restitution hearing. Instead, the juvenile court awarded restitution for wages that Zachary had already lost by the time of the restitution hearing.[5] Therefore, although an award for a future loss of earnings is permissible under our restitution statute, no such restitution was awarded in this case.[6]

Although we conclude that, contrary to Cody's contentions, the restitution award in this case is not one for "future loss of earnings," we must still decide whether the award is proper considering the aforementioned statutory and decisional law limitations on restitution awards. As discussed in further detail below, competent evidence was introduced in this case to demonstrate that there was a loss of earnings and that the loss of earnings was a direct result of the assault by Cody. Thus, the award satisfies the statutory requirements that the loss be a direct result of the crime or delinquent act and that the claim

---

[5] It is worth noting that at the exceptions hearing held on June 15, 2015, the presiding judge did not award restitution for loss of earnings for Zachary's entire work-study period, instead the judge calculated restitution to be awarded from the time of the injury to the date of the initial restitution hearing before the magistrate on April 29, 2015. Had the judge ordered restitution for Zachary's entire work study period, such an award would have been proper even though it would have included restitution for a future loss of earnings. Such an award would still not be speculative or based on a loss not reasonably certain to be incurred because Zachary's employment was definite and the juvenile court had before it competent evidence as to the hours Zachary would have worked and the wages he would have earned.

[6] Cody also argues that part of the restitution order was not for a "loss of earnings" within the meaning of § 11-603 "because Zachary had not been working at Roseda Farm. . . at the time of the assault." We are unable to find in our case law, nor has Cody offered, support for the proposition that the victim must have been working at the time of the assault to be eligible for restitution for lost earnings. It is sufficient that Zachary had definite employment scheduled and that a calculation of his earnings "did not encompass speculative future work." *McDaniel*, 205 Md. App. at 565, 45 A.3d at 924.

16

be proven by competent evidence. CRIM. PROC. § 11-603. As to the restitution's satisfaction of the decisional law limitations—that the claim not be speculative and not cover losses not reasonably certain to be incurred—a review of two cases is illustrative.

In *McDaniel*, the victim suffered a "dental loss"—a dental injury which, at the time of the restitution hearing, he had not yet expended money to correct. 205 Md. App. at 563, 45 A.3d at 922. The Court of Special Appeals approved the restitution award in that case based upon an estimate of cost to repair and restore the victim's teeth. *McDaniel*, 205 Md. App. at 565, 45 A.3d at 924. In so holding, the Court explained that "[t]he statement of the cost of repairing the dental damage and of replacing Robinson's missing tooth was specific enough; it was of a definite amount that did not encompass speculative future work." *Id.* In the case at bar, as established through testimony and through the Roseda Farm letter, Zachary was employed for a specified duration and was able to provide an approximation of the hours and wages involved. *McDaniel* stands for the proposition that an estimate as to the numerical value of the loss is sufficient to support a restitution claim. *Id.* Thus, applying that proposition to the case *sub judice*, we conclude that Zachary's restitution claim satisfies the requirement that the claim not be speculative.

In *In re John M.*, the Court of Special Appeals set aside a restitution order in the amount of $38,300 for future counseling expenses of the juvenile's two sexual assault victims. *In re John M.*, 129 Md. App. at 185, 741 A.2d at 514 ("The juvenile court only has the ability to award restitution for reasonable sums that have already been incurred that are causally related to the juvenile's delinquent acts. Thus, an award for counseling expenses already incurred was appropriate, but not the award for the then future counseling

17

expenses."). In so holding, the Court noted that "statutory limitations and due process considerations do not permit an order of restitution for counseling expenses that are not yet certain to occur."). *Id.* Contrary to the award for future counseling expenses in *In re John M.*, which were not reasonably certain to be incurred by the victims, here, there is no uncertainty about Zachary's loss of earnings. Zachary incurred his loss at the moment he became incapacitated to perform his job and earn wages. Moreover, the restitution awarded in this case was for wages lost during the period of time between the assault and the restitution hearing, and not for the future (*i.e.* beyond the restitution hearing). We thus conclude that Zachary's restitution claim satisfies the requirement that the award cover only losses that the victim is reasonably certain to incur. Accordingly, the restitution ordered in this case was permitted under § 11-603.

**Competency of Evidence**

Subsection (b) of § 11-603 allows for a presumption of a right to restitution, providing:

> (b) A victim is presumed to have a right to restitution under subsection (a) of this section if:
>
>> (1) the victim or the State requests restitution; and
>>
>> (2) the court is presented with competent evidence of any item listed in subsection (a) of this section.

CRIM. PROC. § 11-603(b). *See also McDaniel*, 205 Md. App. at 559, 45 A.3d at 920 ("[A] victim is presumed to have a right to restitution under subsection (a) of § 11–603 when the court is presented with competent evidence of any item listed in subsection (a) of this section.") (quotation omitted). Here, the State and Zachary requested restitution, thus the

application of the presumption provided in § 11-603(b) hinges upon whether the juvenile court was presented with competent evidence of a loss of earnings as a direct result of the delinquent act. *See* CRIM. PROC. § 11-603(b)(2). "Competent evidence of entitlement to, and the amount of, restitution need only be reliable, admissible, and established by a preponderance of the evidence." *Id. See also In re Billy W.,* 387 Md. 405, 433, 875 A.2d 734, 750 (2005) (citing *Alix v. E–Z Serve Corp.,* 846 So. 2d 156, 159 (La. App. 2003), for the proposition that "competent evidence" is evidence that has "some degree of reliability and trustworthiness"). Therefore, the evidence presented in support of Zachary's restitution claim is competent if it was reliable, relevant, admissible, and trustworthy.

The rules of evidence, including the rule against hearsay, do not strictly apply to a juvenile restitution proceeding. *See In re Delric H.,* 150 Md. App. at 249, 819 A.2d at 1126 ("We hold that a juvenile court has the discretion, in the interest of justice, to decline the strict application of the Maryland Rules of Evidence . . . in a restitution hearing."). However, "[e]ven though a court may decline to require a strict application of evidentiary rules, there still exists an inherent reliability/credibility requirement which a proponent of the offered evidence must satisfy." *In re Delric H.,* 150 Md. App. at 248–49, 819 A.2d at 1126.

Cody argues that "[n]othing in the letter or Zachary's testimony established precisely how many hours he would work or how long he would be working or, for that matter, why he could not work at all." Here, evidence that Zachary's loss of earnings was a direct result of the assault by Cody was presented through testimony of Zachary and Zachary's father, as well as through the Roseda Farm letter. Zachary testified to suffering

a broken jaw as a result of being assaulted by Cody. Zachary also testified to missing weeks of school due to his injuries. Further, Zachary testified that he worked with the tractor, weed whacker, and other small farm equipment during his previous employment at Roseda Farm. When asked why he could not continue to work at Roseda Farm, Zachary testified that he was unable to work at Roseda Farm because the vibrations from the farm machinery would cause issues with his healing jaw. Moreover, Zachary testified that it was not his decision to forgo participation in the work study program.

Both Zachary and his father testified that Zachary was scheduled to work in the program at Roseda Farm for the school year and that he would work twenty hours per week at a compensation rate of $8.00 per hour. The Roseda Farm letter provided evidence that Zachary was scheduled to work at the farm for approximately 20 hours per week for approximately 40 weeks. The letter also provided evidence as to the approximate amount Zachary would have earned. The letter was signed by Marcia Bryant, who signed the letter in her capacity as the "office manager" at Roseda Farm. Zachary's father testified that he obtained the letter by asking Zachary's "boss" at Roseda Farm for "something in writing to confirm that [Zachary] was part of the program." As the Court of Special Appeals noted below, "[a]lthough Zachary's father's explanation for how the letter was obtained would not satisfy any exceptions to the rule against hearsay, it does provide additional context and reliability to the document." Moreover, the information contained in the letter was consistent with the testimony of Zachary and his father. Therefore, the letter served to corroborate and enhance the reliability of the testimonial evidence.

20

Accordingly, we conclude that the evidence as to the restitution claim was competent and that Zachary was presumed to have a right to restitution. Cody has not overcome this presumption by showing that the restitution was unfair or unreasonable. *See* CRIM. PROC. § 11-603(b).

Cody nonetheless takes issue with the fact that the Roseda Farm letter provided *approximate* figures regarding how many hours per week Zachary would work and for how many weeks total. Cody argues that the amount of the claim for loss of earnings is too speculative to serve as a basis for restitution.[7] However, the standard for restitution is not one of absolute certainty or precision.[8] Rather, there must be competent evidence showing entitlement to and the amount of lost earnings or expenses to be incurred by the victim as a direct result of the crime or delinquent act. *McDaniel*, 205 Md. App. at 559, 45 A.3d at 920 ("Competent evidence of entitlement to, and the amount of, restitution need only be

---

[7] In an attempt to support this contention, Cody cites case law from out of State to suggest that a restitution award for loss of earnings must be "based on a quantifiable loss that occurred in the interim between the crime and the restitution award" and that loss of earnings awards permitted under a restitution statute "are limited to quantifiable out-of-pocket losses at the time of the restitution award." *Straub v. State*, 292 P.3d 273 (Idaho 2013). However, we note that approximations that are derived from competent evidence are not the antithesis of "quantifiable" losses. Moreover, the hearing judge exercised his discretion to account for this approximation by further reducing the award from $5,120 to $5,000 for Cody's benefit.

[8] At the exceptions hearing, Cody's counsel argued that the loss of earnings claim was speculative because there was "no certainty that Zach[ary] would have stayed at the same job [or] that the employer would have kept paying him the same wage." The judge responded, "[W]ouldn't that be the argument on any claim for lost wages, that the person could have been fired, they could have quit, they could have left for another employment?" We agree with the Circuit Court that if the standard were one of certainty, one would be hard-pressed to make a successful restitution claim for loss of earnings.

reliable, admissible, and established by a preponderance of the evidence.") (citation omitted). As discussed above, the evidence presented at the restitution hearing amounted to competent evidence of a loss of earnings as a direct result of a delinquent act. Nowhere in our case law can we find support for the proposition that in order for lost wages restitution to be proper, the figures presented must be exact down to the decimal.

Finally, Cody seems to suggest that in order to show loss of earnings as a *direct* result of the delinquent act, and thus be entitled to restitution, the State must have proven Zachary was unable to work *any* job.[9] We cannot find, and Cody does not offer, any support from our decisional or statutory laws that this is a requirement of § 11-603. We have stated that something is a "direct result" where there is no intervening agent or occurrence separating the criminal act and the victim's loss. *See Goff*, 387 Md. at 344, 875 A.2d at 142. *See also Stachowski,* 440 Md. at 513, 103 A.3d at 623. Here, as discussed above, competent evidence showed that Zachary's jaw was injured as a result of the assault by Cody. Competent evidence also showed that Zachary had a job at Roseda Farm, where he would be expected to operate small farm machinery, and that the vibrations from the farm machinery would disrupt his healing jaw, thus rendering him unable to work there. Accordingly, we hold that competent evidence supported the restitution claim.

---

[9] Cody contends that "the record is devoid of any evidentiary basis on which the Circuit Court could have found a connection between Zachary's continuing medical and dental conditions and his ability to earn money by *fulfilling his work-study program's requirements in another capacity at Roseda Farms* [sic]." (emphasis added). This asks more from one seeking restitution than the statute requires. Zachary testified his job at Roseda Farm entailed handling farm machinery, which if he operated, would disrupt his healing jaw.

**CONCLUSION**

For the foregoing reasons, we hold that the loss of earnings restitution awarded to Zachary in this case was consistent with the law under § 11-603 of the Criminal Procedure Article and we affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS.**