REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 802

September Term, 2016

———————————————————

UNDER ARMOUR, INC.

v.

ZIGER/SNEAD, LLP

———————————————————

Eyler, Deborah S.,
Arthur,
Wilner, Alan M. (Senior Judge, Specially Assigned)

JJ.

———————————————————

Opinion by Wilner, J.

———————————————————

Filed:  April 27, 2017

The issue before us arises out of a contract for design and professional management services to be provided by appellee, Ziger/Snead LLP, a firm of architects, to appellant, Under Armour, Inc., in connection with the construction of a Visitor Center at appellant's corporate campus in Baltimore City. Disputes arose, and, when appellant withheld $56,249 allegedly due under the contract, appellee filed suit in the Circuit Court for Baltimore City to collect the unpaid fees plus accrued interest on those fees. Appellant responded, in part, with a counterclaim for losses and damages suffered as a result of appellee's allegedly substandard design work and inadequate management.

All of this was presented to a jury, which found in favor of appellee, on both its amended complaint and on appellant's counterclaim, and awarded damages of $58,940. The contract contained what we may characterize as an expense-shifting clause. Section 11.10.2 provided:

> "If Architect employs counsel or an agency to enforce this Agreement, Owner [appellant] agrees to pay the attorneys' fees, costs, expenses, and losses incurred by Architect prior to and through any trial, hearing, and/or subsequent proceeding, relating to such enforcement."

Notwithstanding appellant's initial claim that this clause did not constitute a "prevailing party" provision because it contained no language stating that it *was* such, the parties ultimately agreed that it should be treated as if it were a "prevailing party"

2

provision and that any claim pursuant to it would be deferred until after the jury determined liability on the underlying claim. *See* Md. Rules 2-705 and 2-703.

Following entry of the jury's verdict, appellee filed a motion pursuant to §11.10.2 for $288,617 in attorneys' fees, costs, expenses, and losses, claiming $179,142 in attorneys' fees, $155 in costs, $47,129 in expenses, and $62,190 in losses. After a hearing, the court, with some relatively minor adjustments, granted the motion and awarded appellee $182,735 in attorneys' fees, $155 in costs, $42,830 in expenses (consisting mostly of mediation, deposition, and copying costs), and $62,190 in losses. Final judgment in the aggregate amount of $287,920 was entered on June 1, 2016. Appellant paid all but the $62,190 awarded for "losses," and appealed that part of the judgment, contending, for several reasons, that there was no basis for such an award.

Multiple issues were presented to the Circuit Court with respect to the §11.10.2 claim, many dealing with the claim for attorneys' fees, but, in light of the limited nature of the appeal, the only issue before us deals with the "losses" claimed by appellee. Those losses consisted entirely of the value of the time expended by Mr. Ziger, a principal in the firm, and several employees of the firm, "on matters related to the enforcement of the contract, including investigation of the matter and performing litigation-related tasks at the request of Ziger's attorneys."

The evidence appellee presented on that claim consisted of time-tracking records showing the number of hours Ziger and each of the other employees spent on those matters, multiplied by the hourly rates Ziger and the employees charged to clients for

3

performing work the firm was engaged to perform. Ziger asserted that his role in the firm included the marketing of new business, that the effort he devoted to pursuing the claim against Under Armour detracted from his ability to solicit new business, and that valuing the impact of that diversion by the hourly rate he charged to clients for professional services was reasonable. He was not seeking "lost profits" on new business not obtained but merely the value of his time that he was not able to devote to that pursuit.

In this appeal, appellant does not contest either the number of hours claimed or the reasonableness of the hourly rates. Its defense is more general -- that, under the language of the clause and the type of evidence presented, the court should not have awarded *anything* for "losses." It contends (1) that §11.10.2 "is not sufficiently specific to permit a claim for time spent by Ziger's principals and employees performing litigation-related tasks," and (2) even if that were not the case, "the hourly rates used by the Circuit Court were not an appropriate measure, and having introduced no evidence from which an award may be determined, Ziger is not entitled to any award." Spending time on what was required to enforce the contract, in appellant's view, "gave rise to no additional expense; the employees would have been paid in any event." To that extent, appellant appears to be conflating "losses" and "expenses."

## DISCUSSION

### Standard of Review

The heart of the two issues presented by appellant is a question of contract construction – does §11.10.2 permit recovery for the value of employee time diverted to

4

litigation-related tasks and, if so, does it contemplate that value being determined by the hourly rates those employees charge for providing architectural services to other clients? That is a matter of contract construction, which presents a question of law that we review *de novo*. *See Pines Plaza v. Berkley Trace*, 431 Md. 652, 663, 66 A.3d 720, 727 (2013); *Cas Severn v. Awalt*, 213 Md. App. 683, 692, 75 A.3d 382, 387 (2013). To the extent those issues involve the relevance and admissibility of the evidence produced by appellee, the standard of review depends on the context of the trial court's ruling. As recently stated in *Perry v. Asphalt & Concrete Servs.*, 447 Md. 31, 48, 133 A.3d 1143, 1153 (2016):

> "Our standard of review on the admissibility of evidence depends on whether the 'ruling under review was based on a discretionary weighing of relevance to other factors or on a pure conclusion of law.'[ ] Generally, 'whether a particular item of evidence should be admitted or excluded is committed to the considerable and sound discretion of the trial court' and reviewed under an abuse of discretion standard. [ ] However, we determine whether evidence is relevant as a matter of law. The *de novo* standard of review applies '[w]hen the trial judge's ruling involves a legal question'" [citations omitted].

As we have observed, whether the time-tracking evidence was relevant, and therefore admissible, is governed in this case entirely by whether §11.10.2 permits recovery for diverted employee time, which is an issue of law subject to *de novo* review. We reject the view presented in appellee's brief that the trial court's conclusion that appellee suffered losses in the enforcement of the contract was a finding of fact subject to a clearly erroneous standard of review. True enough, the court found that appellee had suffered losses, but the critical determination was that those losses were compensable under §11.10.2. That is a

5

conclusion of law, not a finding of fact. But for that conclusion, the finding as to both the existence of a loss and its amount would be irrelevant.

## Construction of §11.10.2

The basic contract, to which §11.10.2 was added, was a standard form of agreement between an owner and an architect drafted by the American Institute of Architects (Document B132-2009), but, along with several other provisions, §11.10.2 was not a part of the standard form contract. It was negotiated separately by the parties and added as their addendum. It is, as we have characterized it, an expense-shifting provision. The entitlement it provides to appellee was not treated by the parties or the court as a part of general contract damages for a breach.[1] Appellee's entitlement to recovery under that provision was never submitted to the jury, and no evidence regarding it was offered during the respective cases-in-chief. By its own express terms, it comes into play only if appellee "employs counsel or an agency to enforce this Agreement," and ultimately the parties agreed that it was to be treated as a prevailing party entitlement. Except for the word "losses," it covers reimbursement for only those kinds of expenses that are typical in a fee-

---

[1] It appears that there was a good business reason for Ziger not to include that kind of loss as part of general contract damages. Section 12.1 of the contract, also separately negotiated and added as an addendum, limited damages, except in connection with a claim of fraud or willful or criminal conduct, to the architect's fee provided for in the contract.

shifting provision – attorneys' fees, costs, and expenses clearly related to enforcement following a breach by appellant.[2]  What we are about here is determining whether the right to reimbursement for "losses," as contemplated by §11.10.2, covers the value of diverted employee time.

The thrust of the first prong of appellant's argument is that contractual fee-shifting provisions are an exception of the "American Rule," under which each party is responsible for its own legal fees and costs, and that, as a result, those kinds of provisions are strictly construed in order to avoid inferring duties that the parties did not intend to create.  That statement is generally correct, at least with respect to attorneys' fees.  A court will not infer a contractual fee-shifting obligation where the agreement does not clearly provide for it. *See Nova v. Penske*, 405 Md. 435, 454-58, 952 A.2d 275, 286-89 (2008); *Thomas v. Capital Medical Management*, 189 Md. App. 439, 468-69, 985 A.2d 51, 68 (2009).  That just begs the question, however.  Section 11.10.2 clearly provided, in addition to reimbursement for attorneys' fees, costs, and expenses, reimbursement for "losses."

Stressing its "no liability by inference" notion, appellant insists that the term losses "is not sufficiently specific to support a contractual undertaking to pay Ziger for garden variety litigation tasks performed by those associated with it." *Appellant's Brief* at 7.  If staff time was intended to be covered, according to appellant, the contract should have said so.  For that proposition, appellant cites *Squier Associates, Inc. v. Secor Investments,*

---

[2] Appellant's claim at trial that §11.10.2 was not a prevailing party provision because it contained no language to that effect may have had greater importance if Ziger had lost the case and nonetheless attempted to recover those expenses, but that did not happen.

*LLC*, 103 P.3d 1129 (Or. App. 2004), where the contract at issue provided that if any dispute resulted in litigation, the prevailing party would be entitled to recover "all reasonable costs, *including staff time*, court costs, attorney's fees, and other claim-related expenses." (Emphasis added). In light of that language, the Oregon appellate court concluded that the trial court erred in not including the value of diverted staff time.

Certainly, had the contract before us mentioned staff time, either as an inclusion or an exclusion, the issue before us would not be presented. Its absence, however, is not necessarily fatal. The word "losses" does not stand alone. What §11.10.2 provides reimbursement for are "losses incurred by Architect prior to and through any trial . . . relating to such enforcement." As noted, that provision was added to the form contract by the parties; it was an addition negotiated by sophisticated business entities. It cannot be regarded as a superfluous term; it must mean something – something other than attorneys' fees, costs, and expenses. In interpreting contracts, courts seek to determine the parties' intentions by construing the contract as a whole, "giving effect to every clause and phrase, so as not to omit an important part of the agreement. *Owens-Illinois v. Cook*, 386 Md. 468, 497, 872 A.2d 969, 986 (2005).

Like "expenses" and unlike attorneys' fees and costs, the word "losses" is a general term that legitimately can cover a variety of things. To appellant, that is its weakness, but, assessing its purpose in an objective manner, that is its value -- to avoid the need for the contract to specify each and every conceivable kind of "loss" not covered by the other terms that may result from a default by appellant. Adoption of appellant's view

8

would achieve precisely what should be avoided. The word "losses" is no less definite or specific with respect to the provable diversion of employee time than it is to any other kind of harm not covered by "expenses" that may accrue from a breach of the contract.

Relying on a definition of "loss" in *Black's Law Dictionary*, appellant urges that the word is synonymous with "damage," "injury," "harm," or "diminution in value," which, in its view, is limited to "out-of-pocket costs and expenses" and does not include "tasks that all litigants typically undertake without compensation" and which appellant asserts are equivalent to employees taking personal phone calls or going to the bathroom during work hours.[3]

We do not agree. Courts have dealt with this issue, and most that have done so have regarded diverted employee time as a compensable loss, even when the contract is silent with respect to that issue. In some cases, recovery for employee time has been allowed as part of general compensatory damages rather than under an expense-shifting provision, but that is of little importance. If it could have been recoverable as an element of contractual damages, its placement in an expense-shifting clause should not detract from recoverability, especially when it is a separately negotiated provision.[4]

_____

[3] Appellee has taken no exception to the definitions relied on by appellant. We note that, in *In re Cody H.*, Md. , A.3d (2017) (S.T. 2016, No. 27, Opinion filed 3/24/17), the Court, considering the meaning of "loss" in a restitution statute, cited the definitions found in *The Random House Dictionary of the English Language* 1137 (2d ed. 1987) – "detriment, disadvantage, or deprivation from failure to keep, have, or get."

[4] We note two caveats to that statement. First, if a loss is claimed as part of general contractual damages in a case tried by a jury, any award regarding that claim would

A frequently cited case in this regard is *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781 (9th Cir.1982). The plaintiff sued the supplier of computer hardware that did not function properly. Among the damages sought was the cost of staff time spent supervising the unsatisfactory hardware. The defendant argued, as appellant does here, that no loss was incurred because the plaintiff would have paid those employees anyway – there was no out-of-pocket expense. The Ninth Circuit Court rejected that argument, holding that the issue was not whether those employees would have been paid anyway but whether the breach deprived the plaintiff of the services it paid for.

Following that view are *Pacific Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142 (9th Cir. 2013); *Dunn Appraisal Company v. Honeywell Information Systems, Inc.*, 687 F.2d 877 (6th Cir. 1982); *U.S. v. CBS, Inc.*, 103 F.R.D. 365 (D. C.D. Cal. 1984) and cases cited therein; *Stahl Management Corp. v. Conceptions Unlimited*, 554 F. Supp. 890 (S.D.N.Y. 1983); *Patrick v. Head of the Lakes Co-op. Elec. Ass'n.*, 295 N.W.2d 205 (Wis. App. 1980); *State v. Rouse*, 647 N.W.2d 286 (Wis. App. 2002) ("Most courts that have considered the issue have concluded that a plaintiff can recover the value of employees' lost services as damages in a contract or tort action, even when it had not shown that it incurred additional expenses or lost profits"); *Mobile Conversions, Inc. v. Allegheny*

---

normally be determined by the jury based on evidence presented to it. *See* Md. Rule 2-704(e)(3) relating to attorneys' fees recoverable as contractual damages. The parties, of course, are free to waive a jury determination, and in this case they clearly did so. Second, as suggested in note 1, there may have been a good business reason for Ziger to want this provision in an expense-shifting provision rather than as an element of general contractual damages. That does not detract from the scope or meaning of the word, however.

10

*Ford Truck Sales*, 2014 WL 7369898 (U.S. Dist. Ct., W.D. Pa. 2014). *Compare McKee Co., Inc. v. Carson Oil Co.*, 688 P.2d 1360 (Or. App. 1984) and *Wilson v. Marquette Electronics, Inc.* 630 F.2d 575 (8th Cir. 1980), reaching a different conclusion.

Appellee produced evidence, unchallenged in this appeal by appellant, that, as of December 11, 2015, its employees had expended 79.5 hours evaluating the case and preparing for and attending mediation, 154.5 hours investigating the facts, dealing with discovery, and preparing for and attending depositions, and 69.5 hours preparing for and attending trial. At oral argument, the Court was advised, without objection, that appellee is a small local firm with between 20 and 30 employees. Diverting a total of more than 300 hours of their time at hourly rates ranging from $100 to $200 from income-producing work to assist counsel in preparing a lawsuit to collect wrongfully withheld fees and defending against a meritless lawsuit by appellant certainly constitutes a measure of "injury" or "harm" incurred by the firm, not to mention a "detriment," "disadvantage," or "deprivation from failure to keep, have, or get.".[5] The Circuit Court did not err in allowing the claim for $62,190 as a loss.

---

[5] Appellant complains that appellee offered no evidence that the time the employees spent on the litigation would otherwise have been spent on income-producing work. That is not entirely correct. In his affidavit, Mr. Ziger stated that "[b]y dedicating time to the enforcement of Ziger's contract with Under Armour, Ziger's employees were unable to bill their time to other *active* projects" (emphasis added) and that, as a result, "each employee's time billed at the employee's hourly rate reflects a loss of revenue to Ziger unless Ziger recovers the value of this time." If appellant chose not to accept that statement, it could have sought discovery with respect to what the employees would otherwise have been doing at the relevant times.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.