*Gene Uzoukwu v. State of Maryland, et al.*, No. 409, September Term, 2020. Opinion by Nazarian, J.

**HOME IMPROVEMENT – LICENSING REQUIREMENT – RESTITUTION**

Building owner was entitled to receive restitution under § 11-603 of the Criminal Procedure Article for damage that an unlicensed contractor caused to one of the building's walls in removing a fire escape. The contractor had pleaded guilty to selling home improvement services without a license in violation of § 8-601(a) of the Business Regulations Article, and removal of the fire escape in connection with a contract to do other work on the building constituted "home improvement" under that section and not "demolition" (for which no contractor's license is required).

Circuit Court for Baltimore City
Case No. 819137022

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 409

September Term, 2020

_____

GENE UZOUKWU

v.

STATE OF MARYLAND, ET AL.

_____

Nazarian,
Gould,
Wright, Alexander, Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  September 2, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a home improvement project gone wrong, and the outcome turns on whether the project was a home improvement in the first place. Eugene Uzoukwu hired Kevin Servance to, among other things, remove a fire escape from an exterior wall of a house he owns. Mr. Servance, who misrepresented himself as having a Maryland contractor's license (he listed someone else's license number on the contract), tied the fire escape to a truck and pulled a portion of the wall down with the fire escape. Mr. Servance pleaded guilty in the Circuit Court for Baltimore City to acting as a home improvement contractor without a license, a violation of § 8-601 of the Business Regulations Article ("BR") of the Maryland Code (1992, 2015 Repl. Vol; 2020 Supp.). Mr. Uzoukwu sought restitution for the damage to his building, but the circuit court denied his request on the ground that removal of the fire escape was demolition, not home improvement, and thus not a direct result of the crime for which Mr. Servance pleaded guilty. Mr. Uzoukwu appeals, and we reverse and remand for a new restitution hearing and determination.

## I.    BACKGROUND

On March 17, 2017, Mr. Uzoukwu entered into a contract with Mr. Servance for work on a house Mr. Uzoukwu owns in Baltimore City. Mr. Uzoukwu agreed to pay $14,000 in installments for Mr. Servance to "[i]nstall [a] new rubber roof and remove existing fire escapes (rear and side). Furnish all materials, labor, and permits necessary for the completion of work . . . ." Mr. Uzoukwu testified at the restitution hearing that this work represented one step toward a "total renovation" of the property. At the top of the contract, Mr. Servance listed a Maryland Home Improvement Commission license number, but the number was someone else's.

On May 31, 2017, after Mr. Uzoukwu made the final payment, Mr. Servance or his employees[1] attached the rear fire escape to a truck in an attempt to detach it from the exterior wall of the house. Unfortunately, they hadn't first detached the fire escape from the rear wall, and when they went to pull it down, they brought part of the wall down too. Mr. Uzouwku reported this incident to the Maryland Home Improvement Commission and discovered that Mr. Servance was not a licensed home improvement contractor.

Mr. Servance was charged with violating BR § 8-601(a), which prohibits persons from selling home improvement services in the State without a contractor's license. He pleaded guilty and was sentenced to six months incarceration, all but three consecutive weekends suspended, followed by a six-month term of probation. Mr. Uzoukwu then sought restitution under § 11-603 of the Criminal Procedure Article ("CP") of the Maryland Code (2001, 2018 Repl. Vol.).

On December 3, 2019, the circuit court held a restitution hearing. Mr. Uzoukwu testified about the incident and documented $17,051.61 worth of damages to the home that resulted from the improper removal of the rear fire escape. Mr. Uzoukwu argued that restitution was appropriate because he incurred those damages as a victim of Mr. Servance's crime, acting as a home improvement contractor without a license.

Mr. Servance testified that before he removed the fire escape he told Mr. Uzoukwu "[t]hat it was to . . . [Mr. Uzoukwu's] best interest not to take the fire escape down because

---

[1] It's unclear whether Mr. Servance removed the rear fire escape alone, did so along with his employees, or whether his employees did it at his direction. The answer doesn't affect our analysis, though.

the wall was deteriorated. It was already falling. [The] wall was already down. 90 percent of the wall was already damaged." Mr. Servance accepted payment for the work but claimed that removing the fire escape was a demolition, a task that did not require a contractor's license, rather than a home improvement, which did.

After hearing testimony from both sides, the court denied Mr. Uzoukwu's request for restitution. The court found that there was no connection between Mr. Servance's crime, performing home improvement work without a license, and the damage to the house from removing the fire escape, which the court deemed demolition. Mr. Uzoukwu noted a timely appeal. We supply additional facts as necessary below.

## II.    DISCUSSION

Mr. Uzoukwu raises two issues that boil down to one core question: is the removal of a fixture or element of a building, in this case a fire escape, home improvement work for purposes of BR § 8-601's licensing requirement?[2] We hold that it was: the removal of the fire escape from Mr. Uzoukwu's house was a home improvement service for which a

---

[2] Mr. Uzoukwu phrased his Questions Presented as follows:

> 1. Whether the statute requiring home improvement contractors to be licensed before performing renovation services covers all alterations to a home undergoing renovation, including removing unsightly or dangerous parts of a residence, as well as adding new improvements to a residence.

> 2. Whether a contractor who pleads guilty to misrepresenting himself as a licensed home improvement contractor has no criminal statutory restitution liability for the extensive damage he caused to a residence pursuant to a home improvement contract when he destroyed a wall of the residence.

contractor was required to have a license. The charge to which Mr. Severance pleaded guilty encompassed that work, and Mr. Uzoukwu was entitled to seek restitution for the damages he suffered.

Ordinarily, we review a trial court's decision to grant or deny restitution for abuse of discretion. *In re Cody H.*, 452 Md. 169, 181 (2017) (*citing Silver v. State*, 420 Md. 415, 427 (2011)). But "[w]hen the trial court's [decision] 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'" *Goff v. State*, 387 Md. 327, 338 (2005) (second alteration to original) (*quoting Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72 (2004)). In this case, the denial of restitution flowed from the circuit court's interpretation of BR § 8-101(g)(1), and specifically the meaning of "home improvement," a conclusion we review *de novo*.

Maryland "follows the general principles of statutory interpretation." *Johnson v. Mayor & City Council of Baltimore,* 430 Md. 368, 377 (2013). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the [General Assembly]." *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 316 (2006). We "provide[] judicial deference to the policy decisions enacted into law by the General Assembly, [and we] assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Phillips v. State*, 451 Md. 180, 196 (2017)). To that end, "we begin 'with the plain language of the statute, and ordinary, popular understanding of the English language dictates

interpretation of its terminology.'" *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (*quoting Schreyer v. Chaplain*, 416 Md. 94, 101 (2010)). And "[a]bsent ambiguity in the text of the statute, 'it is our duty to interpret the law as written and apply its plain meaning to the facts before us.'" *Johnson v. State*, 467 Md. 362, 373 (2020) (*quoting In re S.K.*, 466 Md. 31, 54 (2019)).

Mr. Uzoukwu can seek restitution if he is the victim of a crime that directly caused damage to his property. The crime at issue here is defined in BR § 8-601, which makes it a misdemeanor for a person to sell or offer to sell home improvements in Maryland without a contractor's license:

> (a) Except as otherwise provided in this title, a person may not act or offer to act as a contractor in the State unless the person has a contractor license.
>
> (b) Except as otherwise provided in this title, a person may not sell or offer to sell a home improvement in the State unless the person has a contractor license or salesperson license.
>
> (c) A person who violates this section is guilty of a misdemeanor and, on first conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both and, on a second or subsequent conviction, is subject to a fine not exceeding $5,000 or imprisonment not exceeding 2 years or both.

The circuit court found in this case that the removal of the fire escape from Mr. Uzoukwu's home was not a home improvement, but a demolition, which doesn't require a home improvement license. We look, then, to the definition of "home improvement," which appears in BR § 8-101(g)(1):

> (i) the addition to or alteration, conversion, improvement, modernization, remodeling, repair, or replacement of a building or part of a building that is used or designed to be used

as a residence or dwelling place or a structure adjacent to that building; or

(ii) an improvement to land adjacent to the building.

Mr. Uzoukwu focuses on "alteration" here, and although the definitions section doesn't provide any greater specificity to the subcategories of home improvements, the plain meaning of that term readily includes the removal of an element from the outside of a home. A common dictionary defines "alteration" as "the act or process of altering: the state of being altered," and the verb form, to alter, is "to make different without changing into something else." *Alter*, *Alteration*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). This contract required Mr. Servance to remove the fire escape without otherwise changing the house into something else—had the process gone as it should, the rest of the house, including the wall, should have remained. They entered into a contract to alter this house, not to demolish it, and Mr. Servance needed a license to enter into and perform that contract.[3]

And even viewed more holistically, the project still qualified as a home improvement job. During the restitution hearing, Mr. Uzoukwu testified that he hired Mr. Servance to carry out a "total renovation" of the home and that taking down the fire escapes were part of that plan. Whether termed an "improvement," a "modernization," or a "remodeling," a broader project resulting in a greater transformation would still be a

---

[3] Because we are focused here on whether the services at issue in this case qualified as a home improvement project subject to the licensing requirement, we have no occasion to analyze the full contours of the term "demolition" or whether, under different circumstances, the removal of a building element might qualify as a demolition rather than a home improvement.

home improvement. Nothing in the language of the contract or the testimony at the restitution hearing reflects any intention to remove exterior walls from the home or to tear down the home to build something new in its stead. This contract fit within BR § 8-101(g)(1)'s definition of "home improvement." And by selling and performing this home improvement services without a license, Mr. Servance violated BR § 8-601 (as his guilty plea confirmed), and Mr. Uzoukwu was a victim of this crime.

From there, Mr. Uzoukwu was entitled, under CP § 11-603, to seek restitution to the extent his property was damaged or destroyed *as a direct result* of the crime:

> (a) A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:
>
> > (1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased;
> >
> > (2) as a direct result of the crime or delinquent act, the victim suffered:
> >
> > > (i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses;
> > >
> > > (ii) direct out-of-pocket loss;
> > >
> > > (iii) loss of earnings; or
> > >
> > > (iv) expenses incurred with rehabilitation  . . . .

A "direct result" of a crime occurs "where there is no intervening agent or occurrence separating the criminal act and the victim's loss." *In re Cody H.*, 452 Md. at 195. And in this case there was no intervening cause: the damage to Mr. Uzoukwu's home, and the $17,051.61 of financial losses he documented, occurred as a "direct result" of Mr. Servance, an unlicensed home improvement contractor, pulling the fire escape off of the

house with a truck without first detaching it. We reverse the judgment and remand for a

new restitution hearing and determination.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE KEVIN SERVANCE.**